IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge John L. Kane

Civil Action No. **10-cv-2164-AP**

**FRIENDS OF THE NORBECK;** and
**NATIVE ECOYSTEMS COUNCIL**

       Plaintiffs,

v.

**U.S. FOREST SERVICE;** and
**RICK CABLES**, in his official capacity as Regional Forester

       Defendants.

---

**MEMORANDUM OPINION TRANSFERRING THE ACTION
TO THE DISTRICT OF SOUTH DAKOTA**

---

**Kane, J.**

Friends of the Norbeck and Native Ecosystems Council (collectively "Plaintiffs") bring suit against the U.S. Forest Service and Regional Forester Rick Cables (collectively "Defendants") for allegedly violating several federal environmental laws by approving the Norbeck Wildlife Project. Plaintiffs seek declaratory and injunctive relief setting aside Defendants' adoption of the Norbeck Wildlife Project and enjoining its implementation. This action is currently before me on Defendants' Motion to Transfer Venue to the District of South Dakota (Doc. 9). Because Plaintiffs could have brought this action in the District of South Dakota and considerations of convenience and the interest of justice weigh in favor of transfer, Defendants' motion is GRANTED.

## BACKGROUND

*Factual Background*

The Norbeck Wildlife Preserve is located adjacent to Custer State Park in southwestern South Dakota. Created in June of 1920 "for the protection of game animals and birds to be recognized as a breeding place therefore;" The Norbeck Wildlife Preserve Organic Act, 16 U.S.C. § 675; the Norbeck Preserve has been largely protected from extensive extractive uses (such as mining, logging, and grazing) and provides valuable wildlife habitat. Significantly, the Norbeck Preserve contains one of the few remaining old growth forests in the Black Hills.

The majority of the Preserve is managed by the U.S. Forest Service, which has sought to prioritize game animals and birds in its management of the area. Accordingly, over the past thirty years, the Forest Service has increasingly focused on reversing the decline of wildlife habitat values. Although admirable in theory, in practice this policy has been the source of controversy. In 1994 and 1995, the Forest Service prescribed two timber harvests to enhance wildlife habitat. Administrative appeals and lawsuits followed, asserting that commercial timber harvest was inappropriate within the Preserve. A 1999 ruling in this district found the Forest Service interpretation of the Norbeck Organic Act proper, but the 10th Circuit overruled and remanded the decision to the Forest Service to prioritize the Norbeck Organic Act over the National Forest Management Act in its planning process for the Preserve. *Sierra Club-Black Hills Grp. v. U.S. Forest Serv.*, 259 F.3d 1281 (10th Cir. 2001).

In response to this litigation, Congress passed PL 107-206, part of which provided further direction on the Forest Service's management of the Norbeck Wildlife Preserve. 2002 Supplemental Appropriations Act for Further Recovery From and Response to Terrorist Attacks

2

on the U.S., Pub. L. No. 107-206, 116 Stat. 820. Specifically, Congress ordered that the two harvest projects found improper by the 10th Circuit should proceed, added 3,600 acres of the Preserve to the Black Elk Wilderness, and prescribed consultation with South Dakota Game, Fish, and Parks in future management actions within the Norbeck. *Id.* at § 706. Significantly, Congress also directed that the Forest Service "is authorized to use the full spectrum of management tools including prescribed fire and silvicultural treatments to benefit game animal and bird habitat in meeting the purposes of the Norbeck Organic Act." *Id.* at § 706(h).

Pursuant to this congressional directive, in 2004 the Forest Service entered into a Memorandum of Understanding with South Dakota Game, Fish, and Parks regarding the management and monitoring of the Norbeck Wildlife Preserve. The parties developed a list of game animals and birds on which to focus habitat objectives. In 2009, the parties entered into another Memorandum of Understanding interpreting the Norbeck Organic Act's mandate that the Norbeck Wildlife Preserve be utilized "for the protection of game animals and birds to be recognized as a breeding place therefore" by defining the words "game animals," "protection," and "breeding place." Based on the congressional directive and these MOUs, the Forest Service proposed the Norbeck Wildlife Project, with the goal of "improv[ing] habitat conditions for game animals and birds on National Forest System land within Norbeck Wildlife Preserve, and [] reduc[ing] the risks and consequences of fire escaping from the Black Elk Wilderness." Norbeck Wildlife Project Final Environmental Impact Statement (Doc. 17-23) at 3. These MOUs and the Norbeck Wildlife Project are the subject of Plaintiffs' challenge in the instant controversy.

*Procedural History*

Plaintiffs timely filed administrative appeals of the Norbeck Wildlife Project, and these

3

appeals were dismissed. Plaintiffs then filed suit in this court seeking declaratory and injunctive relief relating to Defendants' Record of Decision authorizing implementation of the Norbeck Wildlife Project. On October 1, 2010, Defendants filed a Motion to Transfer Venue (Doc. 9), arguing that the case is properly venued in the District of South Dakota and that transferring venue would be in the interests of justice and the convenience of the parties and witnesses.[1]

## JURISDICTION AND VENUE

Plaintiffs assert a variety of claims under the Norbeck Organic Act, 16 U.S.C. § 675, National Environmental Policy Act, 42 U.S.C. § 4331 *et seq.*, National Forest Management Act, 16 U.S.C. § 1600 *et seq.*, and Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, against the United States as a defendant. Accordingly, I have subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1346 (United States as defendant). Furthermore, because Defendant Rick Cables, the Region 2 Regional Forester in the Rocky Mountain Regional Office in Golden, Colorado, resides within this district, venue is proper under 28 U.S.C. § 1391(e)(1).

## LEGAL STANDARD

The propriety of venue in this district notwithstanding, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Any party, and

---

[1] Additionally, Plaintiffs filed a Motion for Preliminary Injunction (Doc. 12) on October 7, 2010, and the State of South Dakota filed a Motion to Intervene (Doc. 15) on October 12, 2010. On October 7, 2010, I ordered the parties to brief Defendant's Motion to Transfer Venue, finding it prudent to resolve first the issue of venue before considering the other pending motions.

even the court *sua sponte*, can move for transfer of an action under § 1404(a). Where, as here, a party moves to transfer a case pursuant to § 1404(a), they bear the burden of establishing that transfer is proper. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). Defendant must make two showings to justify transfer. First, Defendants must establish that Plaintiffs could have originally brought the action in the proposed transferee district, the District of South Dakota. *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (superseded by statute on other grounds). Second, Defendants must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer to that court. *Chrysler Credit Corp.*, 982 F.2d at 1515. Unless the balance of the inconvenience strongly favors the moving party, the plaintiff's choice of forum should rarely be disturbed. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).

Although § 1404(a) specifies three factors which must be considered in determining whether to transfer venue, they are "broad generalities that take on a variety of meanings in the context of specific cases." 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3847 (2007); *see also Van Dusen*, 376 U.S. at 622 (The purpose of the statute is "the individualized, case-by-case consideration of convenience and fairness"). "A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). These factors include: (1) the plaintiff's choice of forum; (2) the convenience and location of witnesses and other sources of proof; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of

5

questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and,(9) all other considerations of a practical nature that make a trial easy, expeditious, and economical. *Chrysler Credit Corp.*, 928 F.2d at 1516 (citing *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

**ANALYSIS**

As a threshold matter, venue is proper in the District of South Dakota. The challenged actions occurred in the district; Plaintiff's claims exclusively involve a project authorized by the Hell Canyon District Ranger in Custer, South Dakota, and to be implemented on the Norbeck Preserve within the state of South Dakota. Accordingly, under 28 U.S.C. § 1391(e)(2), the action could have been brought in the District of South Dakota, and it may properly be transferred there pursuant to 28 U.S.C. § 1404(a). In order to determine whether or not to do so, however, I must consider the factors enumerated above.

Contrary to the general presumption, Plaintiffs' preference for pursuing this action in this district is entitled to little weight. It is neither their principal place of business nor the place where the operative facts giving rise to the claims occurred.[2] *See Four Corners Neurology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 464 F. Supp. 2d 1095, 1098 (D. Colo. 2006); *Bailey v. Union Pac. R.R.*, 364 F. Supp. 2d 1227, 1230 (D. Colo. 2005). In fact, most of the operative facts giving rise to the instant claims occurred in South Dakota and one of the plaintiffs has its principal place of business in South Dakota. These facts weigh in favor of transfer.

The convenience of witnesses also weighs in favor of transfer. Ordinarily, in a record

---

[2] Although the parties contest the extent of the involvement of staff at Region 2 Headquarters in Golden, Colorado, in this decision, it is undeniable that the bulk of the planning occurred in the Hells Canyon Ranger District of the Black Hills National Forest.

review case, there would be no need for witnesses or other sources of proof. Because Plaintiffs have filed a motion for a preliminary injunction, however, Defendants may (and have indicated an intention to) present witnesses on the issues of irreparable harm, balance of equities, and public interest at the preliminary injunction hearing. To demonstrate inconvenience, Defendants must "(1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, __ F.3d ___ (10th Cir. Sept. 7, 2010), 2010 U.S. App. LEXIS 18690, *40, 2010 WL 3473382 (citations and alterations omitted). Defendants have readily established the first two requirements. The overwhelming majority of these potential witnesses live in South Dakota and Defendants have specified what their testimony will cover. Defendants' List of Potential Witnesses (Doc. 9-7). Defendants fail, however, to satisfy the third requirement. In fact, these witnesses are employed by Defendants and could be compelled to testify. Although Defendants have failed to demonstrate the requisite inconvenience for its witnesses, I find the location of these witnesses does weigh slightly in favor of transferring venue to a more convenient forum.[3]

Plaintiffs counter, arguing that transfer would result in significant inconvenience to them. Specifically, Plaintiffs argue that their counsel are not admitted to practice in the District of South Dakota and they have been unable to locate sufficiently qualified local counsel. Even if

---

[3] Although the parties argue over the location of the Administrative Record, absent specific evidence to the contrary I believe this is a non-issue. In light of technological advances, thousands of pages of documents may be saved on easily transportable compact discs. The concerns underlying this factor have been, for the most part, rendered irrelevant and anachronistic.

Plaintiffs' counsel are not admitted to practice in the District of South Dakota, "the location and convenience of counsel is not a relevant factor" in considering a motion to transfer venue. *Bailey*, 364 F. Supp. 2d at 1230. This concern is further allayed by the fact that Plaintiffs' counsel may seek admission on a *pro hoc vice* basis under the Local Rules of Civil Practice by associating with a member in good standing of the bar of the District of South Dakota. D.C.S.D. L. Civ. R. 83.3(E) (Doc. 17-10). Although Plaintiffs' counsel asserts they do not know any attorneys in South Dakota, there is no reason to believe that Plaintiffs' counsel could not conduct a reasonable search to locate a local counsel to sponsor their *pro hoc vice* application. This argument is irrelevant to my determination, and I give it no weight.

Similarly unavailing is Plaintiffs' argument that Defendants seek to transfer venue in order to avoid adverse precedent. No showing has been made of any conflict between relevant decisions of the 8th and 10th Circuits. In light of the ferocity with which the parties are contesting the proper forum for this controversy, one could reasonably conclude that both parties are "forum shopping." Even if Defendants were engaged in a cynical ploy to avoid application of negative case-law, there is no reason to question the ability of the judges in the District of the South Dakota to resolve this controversy fairly and properly. In fact, as the D.C. Circuit has acknowledged, where all the claims are based on federal law I presume that "the transferee federal court is competent to decide federal issues correctly." *In re Korean Air Lines Disaster of Sept. 1, 1993*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (quoting Richard L. Marcus, Conflicts Among Circuits and Transfers Within the Federal System, 93 Yale L.J. 677, 679 (1984)).

Notwithstanding Plaintiffs' argument to the contrary, I find the considerable local interest in the Norbeck Wildlife Preserve most influential. Although the issues presented are of

8

national importance, South Dakota has a unique stake in the management of the Norbeck Wildlife Preserve. Although the Preserve is primarily administered by the federal government, it adjoins and complements South Dakota's Custer State Park. Management of game animals and habitat on the Norbeck Preserve will impact wildlife existing in Custer State Park and the state has an interest in containing the impacts of the mountain pine beetle epidemic both on game animals in Custer State Park as well as the increased fire hazard to local communities. The extent of South Dakota's interest is evidenced by its active participation in the management of the Norbeck Wildlife Preserve and the development of the Norbeck Wildlife Project. Moreover, the multitude of comments submitted by residents of South Dakota during the planning process underscore the interest of the people of South Dakota in this matter.[4] Norbeck Wildlife Project Final Environmental Impact Statement, Appendix 1: Norbeck Wildlife Project Summary of Comments on the Draft EIS (Doc. 9-6). Finally, South Dakota has sought permission to intervene in this lawsuit to protect its interests. The extent of these local interests weigh heavily in favor of transferring venue to the District of South Dakota. *See Sierra Club v. Flowers*, 276 F. Supp. 2d 62 (D.D.C. 2003) (finding that, although there was a national aspect to the controversy, the significant local interest in the challenged project justified transfer).

The other factors are, for the most part, irrelevant. There is no question as to the enforceability of any potential judgment; there are no perceivable advantages or obstacles to a fair trial; and there are no questions of local law which either court would be better suited to address.

---

[4] Of the forty-nine comments submitted on the Draft EIS, thirty-six came from residents of South Dakota. Notably, only two comments came from this District, and both were from government agencies.

Although the District of Colorado has a heavier caseload, there is no indication that there would be any difficulties in ensuring the timely resolution of this controversy in either forum.

In light of these factors, the convenience of the parties and the interest of justice weigh in favor of transferring venue to the District of South Dakota.

## CONCLUSION

I do not speculate as to the vagaries of forum selection. A plaintiff must consider a variety of factors in determining which court is best situated to grant it the relief it seeks. That choice is not, however, beyond reproach. Where, as here, the interest of justice outweighs the deference which a plaintiff's choice of forum is owed, transfer of venue is necessary and appropriate. Accordingly, Defendants' Motion to Transfer Venue (Doc. 9) is GRANTED. This case shall be transferred to the District of South Dakota for all further proceedings.

Dated: October 18, 2010                    BY THE COURT:

                                                               **/s/ John L. Kane**
                                                               SENIOR U.S. DISTRICT JUDGE